UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CHASE CALDWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:19 CV 428 |
| | ) |
| JOHN PATSTON, *et al.*, | ) |
| | ) |
| Defendant. | ) |

## OPINION and ORDER

This matter is before the court on defendants' motion for summary judgment. (DE # 63.) For the reasons that follow, defendants' motion will be granted.

I.    BACKGROUND

On September 16, 2019, defendant Sgt. Steve Kobitz, defendant Lt. John Patston, and defendant Sgt. Christopher Allison, responded to a report of a suspicious male subject who had hit a woman while riding his bicycle and rode away. (DE # 64-1 at 1; DE # 64-2 at 1.) Other officers identified the suspect as the plaintiff, Chase Caldwell. (DE # 64-1 at 1.)

Based on Sgt. Allison's prior knowledge that Caldwell had been confrontational with police officers in the past, and that he fled from another officer the previous weekend, Sgt. Allison drove to the area to assist. (*Id.* at 2.) Officers indicated that Caldwell appeared to be headed toward his home. (*Id.*) In response, Sgt. Allison drove toward that area. (*Id.*) Sgt. Allison observed Caldwell riding his bicycle on the sidewalk while two squad cars followed with their emergency lights on and using their sirens.

(*Id.*) One of the officers yelled at Caldwell to stop. (DE # 64-3 at 10.) Caldwell did not make any effort to stop. (DE # 64-1 at 2.) Sgt. Kobitz was already parked in front of Caldwell's home and signaled for Caldwell to stop as Caldwell approached him. (*Id.*) Caldwell dismounted his bicycle, ran past Sgt. Kobitz, toward the back of his home. (*Id.*) Sgt. Allison exited his squad car and ran after Caldwell, along with other officers. (*Id.*) As the officers reached the back door, Caldwell went inside the house and locked the door. (*Id.* at 2-3.) Sgt. Allison used his window punch tool to shatter the glass on the back door, to unlock the door from the inside. (*Id.* at 3.) Sgt. Kobitz, Sgt. Allison, and a third officer, entered the home and searched for Caldwell. (*Id.*) The officers found a side door open and an open storm door, and concluded that Caldwell had exited the home and continued running. (*Id.*)

Officers remained in the area waiting for Caldwell to return home. (*Id.*) While they were waiting, Sgt. Allison and another officer did a second, more detailed search for Caldwell within the residence. (*Id.*)

Lt. Patston heard over the radio that Caldwell had fled his home. (DE # 64-2 at 1.) A passerby told officers that they saw an individual running down Glendale Blvd. (*Id.* at 2.) Lt. Patston went to that area and pulled into the CVS parking lot. (*Id.*) He then saw Caldwell walking down Glendale Blvd. (*Id.*) Lt. Patston pulled out of the parking lot and Caldwell ran when he saw Lt. Patston's police vehicle. (*Id.*) Lt. Patston and Sgt. Kobitz intercepted Caldwell at an intersection, placed him in handcuffs, and informed him that he was under arrest. (*Id.*) As a result of these events, Caldwell was charged

with the misdemeanor of resisting law enforcement, pursuant to Indiana Code 35-44.1-3-1(a)(3). (DE # 64-3 at 1.)

Prior to September 16, 2019, Sgt. Allison had prior contacts with Caldwell. (DE # 64-1 at 3.) Sgt. Allison explained that, based on his prior experiences with Caldwell, Caldwell was unpredictable, unstable, erratic, exhibited paranoid behavior, and seemed mentally ill. (*Id.*) Sgt. Allison also had knowledge of prior interactions Caldwell had with other law enforcement officers. (*Id.*) Sgt. Allison knew that Caldwell had suddenly and aggressively approached officers, yelled at officers, and postured himself in a fighting stance. (*Id.*) Two days before this incident, Sgt. Allison learned that Caldwell had threatened to abduct women and children from the park. (*Id.*)

Caldwell subsequently filed this suit. Liberally construing his *pro se* amended complaint (DE # 31), he alleges that defendants violated his Fourth Amendment rights by arresting him and pursuing him into his home without a warrant. He also alleges that defendants violated Indiana tort law and the Indiana Constitution.[1]

Defendants now move for summary judgment. (DE # 63.) This matter is fully briefed and is ripe for ruling.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to

---

[1] While Caldwell's amended complaint appears to make an excessive force claim regarding his arrest, he clarifies in his response brief that he does not intend to state such a claim. (DE # 68 at 2.)

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson*, 477 U.S. at 248; *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50. In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

### III. ANALYSIS

    A. *Defendants' Statement of Material Facts*

Pursuant to Federal Rule of Civil Procedure 56(c), a party asserting that a fact is genuinely disputed must support the assertion by citing to particular parts of materials

4

in the record, or show that the materials cited do not establish the absence of a genuine dispute. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Federal Rule of Civil Procedure 56(c), the court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e). The enforcement of Federal Rule of Civil Procedure 56(e) is left to the sound discretion of the district court. *See Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1109–10 (7th Cir. 2014).

Additionally, in the Northern District of Indiana, Local Rule 56-1(b)(2) requires that a party opposing a motion for summary judgment file a response brief or appendix that contains a section labeled "Statement of Genuine Disputes" that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary. "[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). A Statement of Genuine Disputes "is a critical element of any response to a motion for summary judgment, because without it, the movant's version of the facts are accepted as undisputed." *Carragher v. Ind. Toll Road Concession Co.*, 936 F. Supp. 2d 981, 985 n.1 (N.D. Ind. 2013); *see also Caldwell v. Klemz*, No. 2:14-CV-455, 2017 WL 4620693, at *3 (N.D. Ind. Oct. 12, 2017). It is within the district court's discretion to require strict compliance with its local rules governing summary judgment. *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 711 (7th Cir. 2015); *Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014). Even *pro se* litigants must

comply with local rules governing summary judgment procedures, or risk the court's adoption of the movant's statement of facts. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).[2]

Caldwell, who is proceeding without a lawyer, was provided with the required notice to *pro se* filers, setting forth his burden at the summary judgment stage. (DE # 66.) It was Caldwell's responsibility to clearly identify any disputes of material fact, with appropriate citation to evidence in the record. In light of his failure to do so, defendants' statements of material facts, as supported by the evidence in the record, are deemed admitted.

B. *Caldwell's Arrest*

Defendants argue that they are entitled to summary judgment on Caldwell's Fourth Amendment claim regarding his arrest because they had probable cause to arrest Caldwell for resisting law enforcement, under Indiana Code 35-44.1-3-1(a)(3). (DE # 64 at 7.) Indiana Code 35-44.1-3-1(a)(3) provides that a person who "knowingly or intentionally" "flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop" "commits resisting law enforcement, a Class A misdemeanor[.]"

"The existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest or false imprisonment." *Abbott v. Sangamon*

---

[2] While the court adopts defendants' statement of material facts, the court must still view those facts in the light most favorable to Caldwell. *See id.*

*Cty., Ill.*, 705 F.3d 706, 713–14 (7th Cir. 2013). "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Id.* at 714.

Defendants are entitled to summary judgment on Caldwell's false arrest claim. The undisputed evidence demonstrates that officers attempted to speak to Caldwell after it was reported that he hit a woman on his bicycle. It is further undisputed that Caldwell knowingly or intentionally fled from the officers after the officers signaled and then verbally ordered him to stop. Thus, the facts and circumstances known to the officers at the time of Caldwell's arrest would warrant a reasonable, prudent person in believing that Caldwell had committed a violation of Indiana Code 35-44.1-3-1(a)(3).

C. *Entry of Caldwell's Home*

"The Fourth Amendment ordinarily requires that police officers get a warrant before entering a home without permission. But an officer may make a warrantless entry when 'the exigencies of the situation' create a compelling law enforcement need." *Lange v. California*, 141 S. Ct. 2011, 2016 (2021). "The exception enables law enforcement officers to handle emergencies—situations presenting a compelling need for official action and no time to secure a warrant." *Id.* at 2017 (cleaned up). For example, an officer may enter a home without a warrant to: render emergency assistance to an injured occupant; protect an occupant from imminent injury; ensure the officer's own safety; prevent the imminent destruction of evidence; or prevent a suspect's escape. *Id.* "In those circumstances, the delay required to obtain a warrant would bring about some

7

real immediate and serious consequences—and so the absence of a warrant is excused." (*Id.* (internal citation and quotation marks omitted)).

The Supreme Court has held that when "a minor offense alone is involved, police officers do not usually face the kind of emergency that can justify a warrantless home entry." *Id.* at 2020. A suspect's flight changes this calculus, but not so much that pursuit of a fleeing misdemeanor suspect is categorically an exigent circumstance. *Id.* at 2016, 2021. "An officer must consider all the circumstances in a pursuit case to determine whether there is a law enforcement emergency. On many occasions, the officer will have good reason to enter—to prevent imminent harms of violence, destruction of evidence, or escape from the home. But when the officer has time to get a warrant, he must do so—even though the misdemeanant fled." *Id.* at 2024. The ultimate question in this analysis is whether the officers' actions were reasonable. *Id.* at 2017.

Here, defendants first argue that Sgt. Allison's warrantless entry into Caldwell's home was reasonable because Caldwell fled and they were in active pursuit of Caldwell. (DE # 64 at 9.) Defendants' argument is precisely the type of categorical application of the hot pursuit exigent circumstance exception that the Supreme Court rejected in *Lange*.[3] Moreover, the only case defendants cite, *White v. Hefel*, 875 F.3d 350, 357 (7th Cir. 2017), is plainly distinguishable, as the suspect in *White* fled into a stranger's home, rather than his own.

---

[3] The court notes that *Lange* was decided after defendants' motion was filed.

Defendants also argue that exigent circumstances exist because Sgt. Allison reasonably believed that Caldwell posed a danger to the officers on the scene and there was also a risk that Caldwell would escape. (DE # 64 at 10.) Defendants point to Sgt. Allison's knowledge of Caldwell's prior interactions with law enforcement, where he shouted and took a fighting stance, and generally behaved in an erratic and unpredictable manner. Defendants also point to Sgt. Allison's knowledge that Caldwell had been accused of knocking a woman over while he was riding his bicycle and the fact that, two days earlier, Sgt. Allison learned that Caldwell had threatened to abduct women and children from the park.

This case presents a close question. However, given all that Sgt. Allison knew of Caldwell's history, a reasonable officer in his shoes would have been justified in the belief that an emergency situation existed and a warrantless entry into Caldwell's home was necessary to protect the officers, public, and/or prevent Caldwell's escape.

In his response brief, Caldwell asserts that Sgt. Allison unlawfully entered his house a second time, after Caldwell escaped from the house. (DE # 68 at 1.) Even liberally construing his amended complaint, Caldwell did not raise a claim regarding a second entry of his home, and he cannot amend his complaint through arguments in his response brief to a motion for summary judgment. *See Anderson v. Donahoe*, 699 F.3d 989, 998 (7th Cir. 2012). However, even if he had raised such a claim, defendants would be entitled to summary judgment, as Sgt. Allison's two entries were part of a single, continuous search or seizure. *See e.g. City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 612 (2015); *Michigan v. Tyler*, 436 U.S. 499, 511 (1978). Sgt. Allison was not

9

required to justify the continuing emergency with respect to his re-entry, because he re-entered the house to ensure that Caldwell was not still hiding in the house. *Id.*

### D. Qualified Immunity

Even if defendants were not entitled to summary judgment on Caldwell's warrantless entry claims, defendants would nevertheless be entitled to summary judgment on their defense of qualified immunity. The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Marshall v. Allen,* 984 F.2d 787, 791 (7th Cir. 1993). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). The United States Supreme Court holds that if no constitutional right was violated, there is no necessity for further inquiries. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). However, if a violation could be made, the next step is to ask whether the right was clearly established; this inquiry must be undertaken in light of the particular circumstances of the case. *Id.* The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation the officer confronted. *Id.* "A constitutional right is 'clearly established' for qualified-immunity purposes where [t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Abbott v. Sangamon County, Ill.,* 705 F.3d 706, 731 (7th Cir.

2013). "A case holding that the exact action in question is unlawful is not necessary." *Alicea v. Thomas,* 815 F.3d 283, 291 (7th Cir. 2016).

In 2013, the Supreme Court found that an officer was entitled to qualified immunity for chasing a fleeing misdemeanant onto the curtilage of a home because of a split in federal and state case law on the propriety of doing so. *Stanton v. Sims*, 571 U.S. 3, 10–11 (2013). Since *Stanton*, the law in this area has remained unsettled. *See e.g. Rodriguez v. City of Berwyn*, No. 16 C 5106, 2018 WL 5994984, at *11 (N.D. Ill. Nov. 15, 2018) ("[E]xisting Fourth Amendment precedent does not clearly resolve whether pursuing a suspect from the site of misdemeanor resistance into his home counts as a hot pursuit of the sort that justifies entering the suspect's home without a warrant[.]"); *Burns v. Vill. of Crestwood*, No. 12-CV-484, 2016 WL 946654, at *9 (N.D. Ill. Mar. 14, 2016) ("There is uncertainty in the law concerning whether the hot pursuit of a person suspected of a misdemeanor is sufficient to constitute an 'exigent circumstance' that frees police from the warrant requirement."). In fact, it was not until this June (long after the incident in this case) that the Supreme Court settled the question in *Lange* and found that, depending on the circumstances of the case, hot pursuit of a suspected misdemeanant may constitute an exigent circumstance. *Lange*, 141 S. Ct. at 2024.

"Qualified immunity is supposed to protect officers in the close case, and it therefore must apply to the officer's snap judgment in a legally hazy area." *White v. Stanley*, 745 F.3d 237, 241 (7th Cir. 2014). That is precisely the type of case Sgt. Allison faced when deciding whether to pursue Caldwell into his home. In light of the unsettled state of the law at the time, Sgt. Allison's decision was not "plainly incompetent" or

"beyond debate," *see Stanton*, 571 U.S. at 10-11, and therefore Sgt. Allison would be entitled to qualified immunity for his warrantless entry into Caldwell's home, to the extent that his entry violated the Fourth Amendment.

### E. Claims under the Indiana Constitution

Caldwell also purports to bring claims under the Indiana Constitution. "A few states have enacted statutes creating or regulating claims for damages for state constitutional torts. Indiana, however, has no statutory provision comparable to 42 U.S.C. section 1983 creating an explicit civil remedy for constitutional violations by either individual officers or governmental entities." *Cantrell v. Morris*, 849 N.E.2d 488, 493 (Ind. 2006). In *Cantrell*, the Indiana Supreme Court declined to adopt a general position regarding private rights of action under the state constitution. Instead, the Court held that there was no private right of action for damages under Article I, § 9 of the Indiana Constitution. *Id.* at 507.

Since *Cantrell*, both Indiana and federal courts have consistently declined to find an implied right of action for damages under the Indiana constitution. *See e.g. City of Indianapolis v. Cox*, 20 N.E.3d 201, 212 (Ind. Ct. App. 2014) ("[N]o Indiana court has explicitly recognized a private right of action for monetary damages under the Indiana Constitution." (quoting *Smith v. Ind. Dep't of Corr.*, 871 N.E.2d 975, 985 (Ind. Ct. App. 2007)); *Hoagland vs. Franklin Township Community School Corp.*, 10 N.E.3d 1034, 1040 (Ind.Ct.App.2014) ("[T]here is no express or implied right of action for monetary damages under the Indiana Constitution"); *Ball v. City of Indianapolis*, 760 F.3d 636, 645

12

(7th Cir. 2014) (noting that Indiana has yet to recognize a civil remedy for violations of the Indiana Constitution)*; Higdon v. Town of Lakeville*, No. 3:15-CV-234-RLM-CAN, 2015 WL 5353266 (N.D. Ind. Sept. 14, 2015) (collecting cases)*; Williams v. Sch. Town of Munster*, No. 2:12-CV-225-APR, 2014 WL 1794565, at *8 (N.D. Ind. May 6, 2014); *Ferris v. Williams*, No. 1:11-CV-836-TWP-MJD, 2012 WL 6201074, at *6 (S.D. Ind. Dec. 12, 2012).

This court will likewise decline to recognize an implied cause of action under the Indiana Constitution. "[R]ecognizing [] an implied right to sue for damages under the Indiana Constitution would work a dramatic change in Indiana law . . .. If such a step is to be taken, it will need to be taken by the Indiana courts, not by a federal court whose duty is to apply existing Indiana law." *Estate of O'Bryan v. Town of Sellersburg*, No. 3:02CV00238-DFH-WGH, 2004 WL 1234215, at *21 (S.D. Ind. May 20, 2004). Thus, defendants are entitled to judgment as a matter of law on any claim for damages based on violations of the Indiana Constitution.

    F.    *State Law Claims*

Caldwell's amended complaint also appears to allege violations of Indiana tort law. Defendants argue that any such claim is barred because Caldwell failed to file a timely tort claims notice in accordance with the Indiana Tort Claims Act ("ITCA"). Ind. Code § 34-13-3-8.

Tort claims brought under Indiana law are subject to the ITCA's procedural and substantive requirements. *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 648 (7th Cir. 2006) (citing *Bienz v. Bloom*, 674 N.E.2d 998, 1003 (Ind. Ct. App. 1996) ( "[O]ur supreme

13

court has held that the Act applies to all torts.")). "Compliance with the ITCA is a prerequisite to pursuing a tort claim . . . regardless of whether suit is filed in state or federal court." *Id.*

Here, the undisputed evidence demonstrates that Caldwell failed to provide the notice required to pursue a tort claim under Indiana law. (DE # 64-4 at 2.) Accordingly, defendants are entitled to judgment as a matter of law on Caldwell's Indiana tort claims.

## IV. CONCLUSION

Defendants' motion for summary judgment (DE # 63) is **GRANTED.** The court directs the Clerk to **ENTER FINAL JUDGMENT** stating:

> Judgment is entered in favor of defendants John Patston, Steve Kobitz, and Christopher Allison, and against plaintiff Chase Caldwell, who shall take nothing by way of the complaint.

### SO ORDERED.

Date: September 28, 2021

                                s/James T. Moody
                                JUDGE JAMES T. MOODY
                                UNITED STATES DISTRICT COURT